T.C. Memo. 1997-288


UNITED STATES TAX COURT


DENNIS E. PEWITT and KATHLEEN M. PEWITT, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24188-88.                    Filed June 25, 1997.


Kathleen M. Pewitt, pro se.

Michelle K. Loesch, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


JACOBS, Judge:  Respondent determined the following deficiencies in, additions to, and increased interest on petitioners' Federal income taxes:

| Year | Deficiency | Additions to Tax Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6621(c) | Sec. 6659 |
|------|-----------|------------|------------|------------|-----------|
| 1980 | $   480 | $  24 | --- | --- | --- |
| 1981 | 931 | 47 | [1] | --- | --- |
| 1982 | 543 | 27 | [1] | --- | --- |
| 1983 | 4,357 | 218 | [1] | [2] | $1,121 |
| 1984 | 4,889 | 244 | [1] | [2] | 1,467 |

[1]  50 percent of the interest due on $931 for 1981, $543 for 1982, $3,735 for 1983, and $4,889 for 1984.

[2]  120 percent of the interest due on $3,735 for 1983, and $4,889 for 1984. Pursuant to the Tax Reform Act of 1986, sec. 1151(c)(1), Pub. L. 99-514, 100 Stat. 2744, former sec. 6621(d) was redesignated as sec. 6621(c).

The deficiencies in this case arise from the disallowance of Schedule E losses and investment tax credits claimed by petitioners with respect to their investment in two partnerships--Media Marketers Limited Partnership (Media Marketers) and Assured Communications Limited Partnership (Assured Communications)--both of which engaged in so-called jingle transactions that this Court determined lacked economic substance. See Pacific Sound Prod. Ltd. Partnership v. Commissioner, T.C. Memo. 1993-253. Petitioners concede the deficiencies. Moreover, the parties have reached a settlement with respect to the additions to tax. Petitioner Kathleen M. Pewitt (Mrs. Pewitt), however, contests her liability for tax, claiming that she is an innocent spouse. Thus, the sole issue to be resolved herein is whether Mrs. Pewitt is entitled to tax relief as an innocent spouse pursuant to section 6013(e). For the reasons discussed, we hold she is not.

All section references are to the Internal Revenue Code as in effect for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference.

Petitioners were married in December 1971 and divorced in October 1986. They timely filed joint Federal income tax returns for 1980, 1981, 1982, 1983, and 1984, the years under consideration. They resided in Escondido, California, at the time the petition in this case was filed.

Mrs. Pewitt (hereinafter sometimes referred to as petitioner) has a high school education; she did not attend college. Upon graduating from high school in 1967, she worked as a dental assistant. She married Dennis Pewitt (Mr. Pewitt) when she was 22 years of age. She continued working as a dental assistant for 4 years following her marriage and then attended John Mycut School of Real Estate, where she obtained a real estate license. Thereafter, she sold residential real estate for approximately 2 years. She stopped working when she had her first child in 1978.

Mr. Pewitt's education was similar to that of Mrs. Pewitt except he took several courses at Everett Community College. He began employment as a dispatcher for the police department, where

he worked for approximately 8 years.  He also obtained a real estate license, and in 1980 left the police department and began selling real estate.

Petitioner's role in the marriage was to care for the home and children.  She took responsibility for the household finances, and Mr. Pewitt was responsible for the family's financial support. Throughout their marriage, petitioners' bank accounts were in joint names.

Financially, the early years of petitioners' marriage were lean and worrisome.  Their financial situation improved when, in 1981, Mr. Pewitt went to work for Transamerica Title Insurance Co. as a branch manager.  In 1982, Continental Mortgage offered Mr. Pewitt employment at double his Transamerica Title salary; Mr. Pewitt accepted the offer.

Because of the dramatic increase in his salary, Mr. Pewitt believed petitioners needed tax "write-offs"; thus, he consulted Ron W. Colwill, a certified financial planner.  Messrs. Pewitt and Colwill met twice.  The first meeting was a "get acquainted meeting", at which Messrs. Pewitt and Colwill discussed Media Marketers.  Mr. Colwill clarified certain erroneous information given to Mr. Pewitt by one of Media Marketers' general partners. (Mr. Colwill was the other general partner of Media Marketers.) Mr. Colwill advised Mr. Pewitt to discuss with Mrs. Pewitt the possibility of petitioners' making an investment in Media Marketers

and told him that if the Pewitts wished to make such an investment, they should jointly meet with him.

At the second meeting, Mr. Colwill discussed with Mr. and Mrs. Pewitt the risks and rewards of an investment in Media Marketers, including tax ramifications. Mr. Colwill gave the Pewitts a prospectus; both Mr. and Mrs. Pewitt "looked" at the prospectus but did not understand its content. As Mr. Pewitt testified: "It was way over our heads at that point."

Mr. and Mrs. Pewitt jointly became limited partners of Media Marketers in 1983 and partners of Assured Communications in 1984. (Although the record is scant with respect to Assured Communications, it appears that petitioners' investment in that partnership was made through Mr. Colwill, who followed the same procedures with regard to Mr. and Mrs. Pewitts' investment in Assured Communications as he had done with their investment in Media Marketers.)

Mrs. Pewitt signed the initial investment documents relating to both Media Marketers and Assured Communications. She was listed on the Forms K-1 issued by the partnerships as a partner. Subsequent to petitioners' divorce in 1987, and prior to the filing of the petition in this case, she wrote Mr. Colwill requesting then-current information about Media Marketers and Assured Communications.

During 1983 and 1984, petitioners constructed a home costing approximately $400,000; petitioner assumed responsibility (as between the Pewitts) for the project.

Petitioners' investment in Media Marketers and Assured Communications resulted in their receiving joint tax refunds for years 1980 through 1984, totaling more than $12,000. Additionally, petitioners were able to shield approximately 50 percent of their gross wages in 1984 and 1985 with the losses attributable to their investments in the two partnerships.

In 1986, Mr. Pewitt purchased for petitioner a Corvette automobile and a $6,000 diamond ring. Upon the Pewitts' divorce, neither took assets of any substance from the marriage, and in fact both subsequently declared bankruptcy.

OPINION

Spouses who file a joint return generally are jointly and severally liable for its accuracy and the tax due, including any additional taxes, interest, or penalties determined on audit of the return. Sec. 6013(d)(3). However, pursuant to section 6013(e), a spouse (commonly referred to as an innocent spouse) can be relieved of tax liability if that spouse proves: (1) A joint return was filed; (2) the return contained a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) in signing the return, the spouse seeking relief did not know, and had no reason to know, of the substantial understatement; and (4) it

would be inequitable to hold the relief-seeking spouse liable for the deficiency attributable to the understatement. Sec. 6013(e)(1). The spouse seeking relief bears the burden of proving that each of the four requirements has been satisfied. In other words, failure to prove any one of the statutory requirements will prevent innocent spouse relief. Bokum v. Commissioner, 94 T.C. 126, 138-139 (1990), affd. 992 F.2d 1132 (11th Cir. 1993).

The parties stipulated that petitioner and Mr. Pewitt filed joint returns for 1980 through 1984 and that petitioners' 1981, 1982, 1983, and 1984 returns contained a substantial understatement of tax due to a grossly erroneous item.

With respect to tax year 1980, the deficiency in income tax is $480. This amount ($480) does not constitute a "substantial understatement". A substantial understatement is an understatement, as defined in section 6662(d)(2)(A), which exceeds $500. Sec. 6013(e)(3). Section 6662(d)(2)(A) defines an "understatement" as the excess of the amount of tax required to be shown on the return over the amount of tax imposed which is shown on the return, reduced by any rebate. Consequently, because there is no substantial understatement involved for 1980, petitioner is precluded from obtaining relief as an innocent spouse under section 6013(e) for that year.

We also hold that petitioner is not entitled to innocent spouse relief for the other years under consideration, namely 1981

through 1984. The evidence establishes that petitioner was a limited partner in both Media Marketers and Assured Communications. She signed documents authorizing the investments, and Forms K-1 were issued naming both petitioner and her husband as partners in the limited partnerships. Petitioner attended a meeting in which she was informed about the tax risks and rewards of making an investment in the limited partnerships, and she acquiesced in becoming a partner with her husband. See Hayman v. Commissioner, 992 F.2d 1256 (2d Cir. 1993), affg. T.C. Memo. 1992-228; Feldman v. Commissioner, 20 F.3d 1128 (11th Cir. 1994), affg. T.C. Memo. 1993-17.

Although petitioner may not have understood the technical tax nuances involved in petitioners' investment in the two limited partnerships, we believe she knew (1) that such investments would enable petitioners to claim substantial deductions and tax credits that would result in the reduction of the amount of taxes petitioners otherwise would owe, and (2) that the Internal Revenue Service might disallow these deductions and tax credits upon audit of petitioners' returns.

Petitioner asserts she is an "ignorant spouse". But as the United States Court of Appeals for the Ninth Circuit (where an appeal of this case would lie) has said: "Of itself, ignorance of the attendant legal or tax consequences of an item which gives rise to a deficiency is no defense for one seeking to obtain innocent

spouse relief." <u>Price v. Commissioner</u>, 887 F.2d 959, 964 (9th Cir. 1989). Further, there is no apparent difference between petitioner's and Mr. Pewitt's knowledge of the investment. Suffice it to say, neither petitioner nor Mr. Pewitt fully grasped the nature and risks of the investments. See <u>McCoy v. Commissioner</u>, 57 T.C. 732 (1972). But they both attended a meeting with Mr. Colwill where he explained the potential tax benefits and risks of the investments. Moreover, petitioner and Mr. Pewitt discussed the tax returns involved and the refunds they were to receive.

Additionally, we do not believe it would be inequitable to hold petitioner liable because she shared with her husband the tax benefits resulting from the claimed deductions and credits.

To conclude, we hold that petitioner is not entitled to innocent spouse relief for any of the years under consideration. To reflect the foregoing and the parties' settlement with respect to the additions to tax,

<u>An appropriate Decision</u>

<u>will be entered</u>.